76 F.3d 385
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Letty CATCHINGS, Plaintiff-Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO, Clare Murphy, individually
and as General Manager of San Francisco City and
County Employees' Retirement System;
Louis H Renne, Dan Maguire,
Defendant-Appellee.
 No. 94-16699.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1996.
Decided Jan. 26, 1996.
 
 Before: ALDISERT*, SCHROEDER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Letty Catchings appeals the district court's order granting summary judgment to the City and County of San Francisco ("City") on claims filed under 42 U.S.C. § 1983 and state law alleging that the City violated her due process rights by denying her certain pension benefits to which she claims entitlement through her deceased husband, a former employee of the San Francisco Municipal Railway. We affirm the district court and draw generously from its order.
 
 I.
 
 3
 Harry Catchings, Appellant's deceased husband, was employed by the San Francisco Municipal Railway for over 30 years before he filed for service retirement. Mr. Catchings initially designated July 1, 1985 as the retirement date, and selected "Option 1 benefits" from among the various retirement plan opinions offered to these employees. On June 28, 1985, Mr. Catchings amended the retirement date to September 30, 1985. And on September 23, 1985, Mr. Catchings again pushed forward his retirement--this time selecting October 2, 1985 as his retirement date, and changing his retirement plan designation from Option 1 to Option 2.
 
 
 4
 Option 2 benefits provide a lower monthly benefit (than Option 1), but full payments continue for the life of the named beneficiary. However, if the employee dies before retirement, the beneficiary under the Option 2 plan receives only a "50% continuation allowance or a lump sum payment equal to the member's accumulated contributions and interest plus sixth months salary."
 
 
 5
 Mr. Catchings died of a stroke on October 1, 1985, several hours before his scheduled date of retirement. Appellant nevertheless applied for a 100% continuation allowance under the Option 2 benefit plan. The Retirement Board denied the request for the full allowance.
 
 
 6
 Appellant filed a petition for an administrative hearing to determine her eligibility for 100% pension benefits, which was heard by an independent hearing officer. The hearing officer denied Appellant's request on March 7, 1986. Shortly thereafter, Appellant petitioned for rehearing, which was also denied.
 
 
 7
 In May 1987, Appellant filed suit in state court for breach of contract. A third amended complaint, filed October 2, 1990, was a petition for writ of mandamus. In that complaint, Appellant averred that she was entitled to 100% benefits and that the actions of the Retirement Board were arbitrary and capricious.
 
 
 8
 Appellant's state court action was tried on November 9, 1990. The state court held, in pertinent part, that "Plaintiff is not entitled to pension benefits under Option 2, or to any other retirement benefits payable to the surviving spouse of a member who dies after retirement." Appellant appealed to the California First District Court of Appeal, which affirmed the Superior Court.
 
 
 9
 After losing in the state court of appeal, Appellant returned to the Retirement Board on December 8, 1992, again requesting an award of 100% pension benefits. The Retirement Board apparently agreed to reconsider this matter and requested that a report be prepared on the additional pension benefits, if any, that Appellant was entitled to receive. The Retirement Board's attorney, Dan Maguire, prepared the report, which was delivered at the Board's January 12, 1993 meeting. This report concluded that Appellant was not entitled to any additional benefits. Appellant did not receive notice that decision on the reconsideration would be made at the January 12 meeting, nor was she given an opportunity to be heard at that meeting.
 
 
 10
 On August 23, 1993, without first filing an administrative claim with the City, Appellant initiated the instant action, again in a California Superior Court, seeking declaratory relief. On October 12, 1993, Appellant filed a First Amended Complaint for Constitutional and Civil Rights Violations, seeking damages, and injunctive and declaratory relief. The defendants-appellees removed the action to federal district court. On April 4, 1994, Appellant filed a Second Amended Complaint, which alleges the present causes of action under 42 U.S.C. § 1983 and California Civil Code § 52.1.
 
 
 11
 The defendants-appellees moved for summary judgment on May 9, 1994. The district court granted that motion on August 19, 1994.
 
 
 12
 The district court had jurisdiction under 28 U.S.C. § 1343. This court has jurisdiction under 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(a), Federal Rules of Appellate Procedure. We review de novo an order granting summary judgment. Kruso v. Int'l Tel. and Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 II.
 
 13
 Appellant first argues that the district court erred by staying discovery and by failing to consider the effect of Proposition 162. We decline to notice these contentions because they were presented to the district court in the first instance on a motion to reconsider. Raising an issue for the first time in a motion to reconsider is not considered adequate preservation of the issue at a summary judgment stage. Intercontinental Travel Marketing, Inc. v. Federal Deposit Ins. Corp., 45 F.3d 1278, 1286 (9th Cir.1994) (citing Hall v. Gus Constr. Co., 842 F.2d 1010, 1017 (8th Cir.1988)). We decline to consider these arguments because Appellant, as the party opposing a summary judgment motion, failed to meet her burden to preserve the issue adequately for the court of appeals. Id., 45 F.3d at 1286 (citing Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 466 (9th Cir.1990)).
 
 III.
 
 14
 Appellant next argues that she was denied procedural due process because she did not receive notice that a decision on her request for reconsideration would be made at the Retirement Board's January 12, 1993 meeting and, consequently, was denied the opportunity to be heard at that meeting. The threshold issue here is whether Appellant had a constitutionally protected property interest in additional pension benefits at the time she was seeking reconsideration before the Retirement Board. The district court concluded that she did not, and we agree.
 
 
 15
 Prior to the Retirement Board's decision in December of 1992 to reconsider Appellant's request, it had been conclusively adjudicated (by constitutionally adequate procedures) that Appellant had no right to 100% pension benefits. Consequently, at the time of the Board's decision to reconsider Appellant's request, she no longer had a constitutionally protected property interest in such benefits. See Reimer v. Smith, 663 F.2d 1316, 1327 (5th Cir.1981) (prior state court adjudication of property claim against plaintiff's favor means that plaintiff has no constitutionally protected property interest over which a subsequent § 1983 action may be brought).
 
 
 16
 Because the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property, Appellant can state a procedural due process claim only if the Retirement Board's decision to reconsider its earlier ruling created a constitutionally protected property interest which was then violated when the Board subsequently denied reconsideration at the January meeting, without providing notice of that meeting to Appellant. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972).
 
 
 17
 The test for whether actions taken or laws enacted by state or local governments create constitutionally protected property interests in a particular benefit is whether, based on such laws or actions, a person "has a legitimate claim of entitlement to [the benefit]." Id. at 577. "Whether an expectation of entitlement is sufficient to create a property interest will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [decision maker]. If the decision to confer a benefit is unconstrained by particularized standards or criteria, no entitlement exists." Allen v. City of Beverly Hills, 911 F.2d 367, 370 (9th Cir.1990) (citations and internal quotation marks omitted). Moreover, a "governing body does not create a property interest in a benefit merely by providing a particular procedure for the removal of the benefit." Sanchez v. City of Santa Ana, 915 F.2d 424, 428 (9th Cir.1990), cert. denied, 502 U.S. 815 (1991).
 
 
 18
 The Retirement Board's decision to consider reexamining its ruling was, at best, an exercise of its inherent authority to reconsider its decisions, deriving from its role under the San Francisco City Charter as "sole authority and judge ... as to the conditions under which members may receive [ ] benefits of any sort under the retirement system." San Francisco City Charter § 3.671. Accordingly, reconsiderations are exercises of discretion that plainly do not create any entitlement on the part of petitioner--much less one that would rise to the level of a constitutionally protected property interest.
 
 
 19
 Summary judgment was properly granted on Appellant's procedural due process claim.
 
 IV.
 
 20
 We have considered all arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts in this circuit except as provided by Ninth Circuit Rule 36-3